**BENTONITE PERFORMANCE MINERALS, LLC, a Product and Service Line of Halliburton Energy Services, Inc., Petitioner**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent**

**United Food and Commercial Workers Union Local 353C, Intervenors.**

**Nos. 10–1265, 10–1419.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 10, 2012.

1

1

1

Howard S. Linzy, The Kullman Firm, New Orleans, LA, Thomas J. Woodford, The Kullman Firm, Mobile, AL, for Petitioner.

Robert J. Englehart, Supervisory, David Allen Seid, Linda Dreeben, Deputy Associate General Counsel, John H. Ferguson, Associate General Counsel, National Labor Relations Board, Washington, DC, for Respondent.

Renee Luvonia Bowser, Esquire, United Food & Commercial Workers International Union, Linda Dreeben, Deputy Associate General Counsel, Robert J. Englehart, Supervisory, David Allen Seid, John H. Ferguson, Associate General Counsel, National Labor Relations Board, Washington, DC, for Intervenors.

Before: GRIFFITH, Circuit Judge, and WILLIAMS and RANDOLPH, Senior Circuit Judges.

### JUDGMENT

PER CURIAM.

This petition for review and cross-application for enforcement were considered on the record, briefs, and oral arguments of the parties. Although the issues present no need for a published opinion, they have been accorded full consideration by the Court. *See* Fed. R.App. P. 36; D.C.Cir. R. 36(d). For the reasons that follow, it is

**ORDERED** and **ADJUDGED** that the petition for review be denied and the cross-application for enforcement be granted.

On July 9, 2007, petitioner, which operates a mine in Northeast Wyoming, had 69 employees belonging to a unit of the International Chemical Workers Union. Bentonite's management, after meeting together on that date, contacted several employees and encouraged them to circulate petitions stating that the em-

ployees no longer wished to be represented by the union. According to Bentonite, a majority of the members of the bargaining unit signed such petitions, and Bentonite withdrew recognition of the union. The Regional Director of the National Labor Relations Board issued a complaint, and an administrative law judge characterized Bentonite's efforts to bring about decertification as a "campaign" and concluded that the "campaign and all its features violated Section 8(a)(1)" of the National Labor Relations Act, which provides that employer actions that "interfere with, restrain, or coerce employees in the exercise of the rights" under the Act are unfair labor practices. 29 U.S.C. § 158(a)(1). The NLRB affirmed the judge's findings and conclusions, concluding that Bentonite had "violated Section 8(a)(5) and (1) by withdrawing recognition from the Union, failing to furnish the Union with information requested on July 19 and 23, 2007, and unilaterally changing wages and other terms and conditions of employment" and had "violated Section 8(a)(1) by discouraging employees from attending a union meeting." *BENTONITE PERFORMANCE MINERALS*, 353 N.L.R.B. No. 75, at 1 (Dec. 31, 2008); *BENTONITE PERFORMANCE MINERALS*, 355 N.L.R.B. No. 104 (Aug. 23, 2010). We must uphold an order of the Board unless it rests upon a finding not supported by "substantial evidence," 29 U.S.C. § 160(f), or the Board failed to apply the proper legal standard or departed from precedent without providing a reasoned justification. *Mail Contractors of America v. NLRB*, 514 F.3d 27, 31 (D.C.Cir. 2008). We find the Board's order to be supported by substantial evidence and affirm the order in its entirety.

The Board has multiple times ruled that employer solicitation of employee signatures on a decertification petition will "taint" the petition and render it invalid. See, e.g., *Caterair Int'l v. NLRB*, 22 F.3d 1114 (D.C.Cir.1994). While merely "ministerial aid" by an employer will not taint the petition, *Bridgestone/Firestone, Inc.*, 335 N.L.R.B. 941 (2001), this is not such a case. Bentonite argues that it did not solicit employees, insisting that it was only "responding to employee-initiated questions." Petitioner Br. 58. The administrative law judge's finding to the contrary is more than supported by substantial evidence. Bentonite also argues that enough unsolicited employees signed the petition to nevertheless constitute a majority, *id.* at 25, and that the Board violated its own precedent in not applying *Master Slack Corp.*, 271 N.L.R.B. 78 (1984), which articulated a four-part test to determine whether a "causal relationship" exists between an unfair labor practice and an employer's withdrawal of recognition. *Id.* at 84. But the Board, though it has been far from forthright in explaining this distinction, has applied *Master Slack* to cases where unfair labor practices not directly related to the decertification process are claimed to have caused the vote in favor of decertification. In cases of employer involvement in the decertification process itself, rising to the level of an unfair labor practice, the Board has traditionally not used the *Master Slack* "causal relationship" test, but rather has used a test in which it does not require any standard showing of causation between the unfair labor practices and the anti-union vote. See *Hearst Corp.*, 281 N.L.R.B. 764 (1986), *enforced mem.* 837 F.2d 1088 (5th Cir.1988). Bentonite does not directly challenge *Hearst* or its sequels. Accordingly, we conclude not only that the Board did not depart from its precedent by failing to use the *Master Slack* test, but also that in the posture of this case the absence of a showing of a causal relationship between Bentonite's ac-

tivities and the anti-union petition majority is not a ground for setting aside the Board's order.

 Bentonite also challenges the imposition of an affirmative bargaining order. The NLRB not only ruled that Bentonite's withdrawal of recognition was unlawful; it also imposed an affirmative order requiring Bentonite to bargain with the union. In neither its exceptions to the order of the administrative law judge nor in its brief before the Board did Bentonite raise this issue, and accordingly we lack jurisdiction to consider it under Section 10(e) of the Act. 29 U.S.C. § 160(e); see *High-lands Hospital v. NLRB*, 508 F.3d 28, 32–33 (D.C.Cir.2007).

Pursuant to Rule 36 of this Court, this disposition will not be published. The clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc*. See FED. R.APP. P. 41(b); D.C. CIR. R. 41.